**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

SHIVA STEIN,                                             :
                                                        :
        Plaintiff,                                :   Civil Action No. 1:21-cv-3867
                                                        :
v.                                                      :   **COMPLAINT FOR VIOLATIONS OF**
                                                        :   **SECTIONS 14(a) AND 20(a) OF THE**
BROOKFIELD PROPERTY PARTNERS LP,                        :   **SECURITIES EXCHANGE ACT OF**
JEFFREY BLIDNER, SOON YOUNG                             :   **1934**
CHANG, OMAR DA CUNHA, STEPHEN                           :
DENARDO, LOU MAROUN, LARS                               :   **JURY TRIAL DEMANDED**
RODERT, CAROLINE ATKINSON, DOUG                         :
MCGREGOR, and MICHAEL WARREN,                           :
                                                        :
        Defendants.                               :

--------------------------------------------------------

      Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

      1.    This is an action brought by Plaintiff against Brookfield Property Partners LP

("BPY or the "Company") and the members BPY's board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants") for their violations

of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in

connection with the proposed merger between BPY and Brookfield Asset Management Inc.

("BAM") and its affiliates ("BAM").

      2.    Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form F-4 (the

"Registration Statement") to be filed on April 26, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company unitholders.  The Registration Statement recommends that Company unitholders vote in favor of a proposed transaction whereby BPY Arrangement Corporation ("Merger Sub") and BAM have agreed to acquire, directly and indirectly, all of the issued and outstanding BPY Units and exchangeable limited partnership units of BPY (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each BPY unitholder will have an option to receive (i) $18.17 in cash, 0.3979 of a BAM class A limited voting share, or 0.7268 of a BPY preferred unit with a liquidation preference of $25.00 per unit (the "Merger Consideration").

3.      As discussed below, Defendants have asked BPY's unitholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's Conflicts Committee's financial advisor, Lazard Frères & Co. LLC ("Lazard") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's unitholders prior to the forthcoming unitholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to BPY's unitholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants'
violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange
Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges
violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant
conducts business in or maintains operations in this District, or is an individual who is either
present in this District for jurisdictional purposes or has sufficient minimum contacts with this
District as to render the exercise of jurisdiction over Defendant by this Court permissible under
traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §
78aa, as well as under 28 U.S.C. § 1391, because BPY's agent for service is located in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of BPY stocks and has
held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Jeffrey Blidner has been a member of the Board since July
2013.

11.     Individual Defendant Soon Young Chang has served as a member of the Board
since April 2014.

12.     Individual Defendant Omar da Cunha has served as a member of the Board since
April 2013.

13.     Individual Defendant Stephen DeNardo has served as a member of the Board since
April 2013.

14.     Individual Defendant Lou Maroun has served as a member of the Board since April 2013.

15.     Individual Defendant Lars Rodert has served as a member of the Board since April 2013.

16.     Individual Defendant Caroline Atkinson has served as a member of the Board since February 2019.

17.     Individual Defendant Doug McGregor has served as a member of the Board since March 2020.

18.     Individual Defendant Michael Warren has served as a member of the Board since November 2020.

19.     Defendant BPY a Bermuda limited partnership and maintains its principal offices at 73 Front Street, 5th Floor, Hamilton, HM 12, Bermuda and its mailing address is 250 Vesey Street, 15th Floor, New York, New York 10281.  The Company's stock trades on the NASDAQ Stock Exchange under the symbol "BPY."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

22.     BPY, through its subsidiary Brookfield Property REIT Inc., is one of the world's premier real estate companies, with approximately $88 billion in total assets. We own and operate iconic properties in the world's major markets, and our global portfolio includes office, retail, multifamily, logistics, hospitality, self-storage, triple net lease, manufactured housing and student

4

housing. Brookfield Property Partners is the flagship listed real estate company of Brookfield Asset Management Inc., a leading global alternative asset manager with over $540 billion in assets under management. More information is available at www.brookfield.com.

23.    On April 1, 2021, the Company and BAM jointly announced the Proposed Transaction:

> BROOKFIELD NEWS, April 01, 2021 (GLOBE NEWSWIRE) -- Brookfield Asset Management Inc. ("Brookfield") (NYSE: BAM; TSX: BAM.A) and Brookfield Property Partners L.P. ("BPY") (NASDAQ: BPY; TSX: BPY.UN) announced today that they have reached agreement for Brookfield to acquire all of the limited partnership units of BPY ("BPY units") at a value of $18.17 per BPY unit[1] (the "Enhanced Offer"), to be completed by way of an Ontario court-approved plan of arrangement ("Arrangement"). This represents total consideration of $6.5 billion payable to the unitholders of BPY other than Brookfield and its affiliates ("public unitholders"). The Enhanced Offer represents an increase of 10%, including the appreciation in Brookfield Class A Shares, over the non-binding proposal made by Brookfield on January 4, 2021, a 26% premium to the undisturbed BPY unit price on December 31, 2020, and a 6% premium to the volume-weighted average price of BPY units on the Nasdaq since the announcement made January 4, 2021.
>
> The independent members of the BPY Board of Directors ("the Directors") have unanimously approved the transaction and recommend that unitholders of BPY do the same.  After consultation with independent financial and legal advisors, and upon the unanimous recommendation of a special committee of independent directors, the Directors have concluded that the offer is fair to the public unitholders and that the transactions contemplated in the Arrangement are in the best interests of BPY.
>
> Nick Goodman, CFO of Brookfield Asset Management, stated, "We are pleased to have reached agreement with BPY's independent directors on a transaction we believe is appealing to BPY unitholders in many aspects and allows for greater optionality in how we manage our portfolio of high-quality real estate assets. Not only can unitholders choose to receive a meaningful portion of their consideration in cash at a significant premium, but they will also have the option to remain invested in the future upside of our real estate business and alternative asset management franchise."

Lazard Frères & Co. LLC ("Lazard"), acting as independent valuator and financial adviser to the special committee, has provided an opinion to the special committee that, as of March 31, 2021 and based upon their analysis and subject to various assumptions, qualifications and limitations to be set forth in its written valuation report, in addition to other factors that it considered relevant, the fair market value of a BPY unit was in the range of $14.00 to $18.50, implying a total enterprise value of $67.6 to $72.1 billion. Lazard has also provided an opinion to the special committee that, as of March 31, 2021 and based upon their analysis and subject to various assumptions, qualifications and limitations to be set forth in its written fairness opinion letter, in addition to other factors that it considered relevant, the consideration being offered to public unitholders under the Arrangement was fair, from a financial point of view, to such public unitholders. Copies of the Lazard valuation report and fairness opinion, and the factors considered by the special committee and the Directors as well as other relevant background information will be included in the management information circular that will be sent to BPY unitholders in advance of the special meeting to be called to consider the Arrangement and related transactions, which BPY unitholders are encouraged to review.

*Transaction Details*

Subject to pro-ration, BPY unitholders will have the ability to elect to receive, per BPY unit, $18.17 in cash, 0.3979 of a Brookfield class A limited voting share ("Brookfield Shares"), or 0.7268 of a BPY preferred unit with a liquidation preference of $25.00 per unit. Pro-ration will be based on a maximum cash consideration of approximately 50% of the total value of the BPY units ($3.27 billion in total cash payable to public unitholders), a maximum amount of Brookfield Shares equal to approximately 42% of the total value of the BPY units (59.3 million Brookfield Shares payable to public unitholders), and a maximum amount of BPY preferred units with a liquidation value of approximately 8% of the total value of the BPY units ($500 million in liquidation preference of BPY preferred units payable to public unitholders).

If public unitholders collectively elect to receive in excess of $500 million in liquidation preference of BPY preferred units, the amount of BPY preferred units can increase to a maximum of $1.0 billion in liquidation preference, offset against the maximum amount of Brookfield Shares. The maximum amount of cash consideration would not be affected.

*Implications for Brookfield Property REIT Inc.*

Any holders of the Class A stock of Brookfield Property REIT Inc. ("BPYU") (NASDAQ: BPYU) that do not exchange their shares of BPYU Class A stock for BPY units prior to the election deadline will receive at closing, in accordance with the terms of the BPYU charter, the same per share consideration as will be received by BPY unitholders who have not made an election, being a combination of approximately 50% cash, 42% Brookfield shares and 8% BPY preferred units (subject to pro-ration). The aggregate consideration of $6.5 billion payable to BPY unitholders in the transaction includes the amount payable to the public holders of shares of BPYU Class A stock and the transaction will not be subject to a vote of holders of shares of BPYU Class A stock.

Any holders of shares of BPYU Class A stock who wish to elect their preferred form of consideration rather than the default pro-rated amounts, and/or vote in favor of or against the Arrangement and related transactions, are encouraged to convert their shares of BPYU Class A stock into BPY units as soon as possible. Instructions on how to do so can be found here.

Following approval of the Arrangement and related transactions by unitholders of BPY, it is expected that the BPYU 6.375% Series A Cumulative Redeemable Preferred stock (NASDAQ: BPYUP) will be redeemed at its par value of $25.00 per share, plus any accrued and unpaid dividends, at or around the closing of the Arrangement.

*Implications for Brookfield Office Property Exchange LP*

The holders of exchangeable limited partnership units of Brookfield Office Property Exchange LP will also be entitled to make the same elections that can be made by BPY unitholders in the transaction. Any holder who does not make an election to participate will have his or her units redeemed prior to closing and will receive the same default consideration as BPY unitholders.

Brookfield is not proposing to acquire other securities of BPY and its subsidiaries, which are expected to remain outstanding.

*Process and Related Matters*

The Arrangement and related transactions are subject to approval by a majority of the public unitholders of BPY, in addition to other customary closing conditions including the approval of the Ontario Superior Court of Justice.   Assuming these conditions are met, the Arrangement is expected to close in the third quarter of 2021.

Pursuant to the terms of the agreement governing the Arrangement, BPY unitholders and holders of shares of BPYU Class A stock and exchangeable limited partnership units of Brookfield Office Property Exchange LP will not receive further quarterly distributions on their securities.

Torys LLP and Goodwin Procter LLP are serving as legal counsel to Brookfield.

Lazard is serving as financial advisor and Goodmans LLP and Latham & Watkins, LLP are serving as legal counsel to BPY's special committee.

\* \* \*

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that BPY' unitholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming unitholder vote.

**B.**     **The Materially Incomplete and Misleading Registration Statement**

25.     On April 26, 2021, BPY and BAM jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's unitholders and solicits the unitholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's unitholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and Lazard by management of BPY with forming a view about the stand-alone valuation. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Projections, the Registration Statement provides values for the non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2025: Net Operating Income by segment, and Funds from Operations by segment , but fails to provide all line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures in direct violation of Regulation G and consequently Section 14(a).

28.     The Registration Statement also fails to disclose BPY's estimated future cash flows that each applicable segment is expected by management of BPY to generate for each of fiscal years 2021 through 2024, along with all line items used to calculate the figures. Future cash flows were used by Lazard in its Discounted Cash Flow Analysis.

29.    When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that unitholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

31.    Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32.    With respect to Lazard's *Discounted Cash Flow Analysis* for BPY, the Registration Statement fails to disclose: (i) the terminal value of each applicable segment at the end of fiscal

year 2024; (ii) the inputs and assumptions underlying the capitalization rates ranging from 5.25% to 6.25% for the Core Office segment and 6.0% to 6.5% for the Core Retail segment; (iii) the inputs and assumptions underlying the discount rates ranging from 5.0% to 6.0% for the Core Office segment and 6.25% to 7.25%  for the Core Retail segment; (iv) the outstanding principal amount of BPY's share of asset-level debt; (v) the outstanding principal amount of BPY's share of corporate debt; (vi) the outstanding principal amount due to the holders of BPY's capital securities, as adjusted for mandatorily convertible securities; (vii) the outstanding principal amount due to the holders of preferred equity; (viii) the outstanding amount due in respect of BPY's first quarter dividend; and (ix) BPY's cash and cash equivalents.

33.     With respect to Lazard's *Comparable Entities Public Trading Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Lazard in the analysis.

34.     With respect to Lazard's *Equity Research Analysts' Price Targets* analysis, the Registration Statement fails to disclose: (i) the five available public market trading price targets for PBY units; and (ii) the research analysts referred to in the analysis.

35.     With respect to Lazard's *Premiums Paid Analysis*, the Registration Statement fails to disclose: (i) the premiums observed in the analysis and (ii) the transactions observed in the analysis.

36.     With respect to Lazard's engagement as financial advisor to the Special Committee, the Registration Statement fails to disclose the amount of compensation Lazard received in the past two years for its advisory and financial services to BAM and certain of its affiliates.

37.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange

Act.  Absent disclosure of the foregoing material information prior to the special unitholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Registration Statement with the intention of soliciting unitholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's unitholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

42.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of BPY within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of

BPY, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of BPY, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of BPY, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

48.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 30, 2021           **MELWANI & CHAN LLP**

By: *&#47;s&#47; Gloria Kui Melwani*
             Gloria Kui Melwani (#5661)
             1180 Avenue of the Americas, 8th Fl.
             New York, New York 10036
             Tel: (212) 382-4620
             Email: gloria@melwanichan.com

             *Attorneys for Plaintiff*